STATE vs. DANIEL SULLIVAN AND MARTIN DALTON.

PROVIDENCE—JUNE 7, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Chapter 38 of the Judiciary Act provided that the Appellate Division of the Supreme Court should give directions as to the manner of the disposition of all pending actions, suits and proceedings, civil and criminal, and for such transmission of the original papers and records as might be necessary to carry out the provisions of the act. This having been done it was

*Held*, That the Common Pleas Division, under sections 22 and 36 of said chapter, obtained full jurisdiction to try and determine an indictment for murder found before the act went into effect.

To render the statements of the deceased admissible as a *dying declaration* it is only necessary to show to the satisfaction of the *court*, in the first instance, that it was made under a sense of impending death. And this may be shown in any mode either by direct proof of the express language of the declarant, or by his inference of evident danger, or the opinions of medical or other attendants stated to him, or by his conduct, or other circumstances revealing the state of the declarant's mind.

The credibility of a *dying declaration*, after admitted in evidence, is entirely for the jury.

The weight to be attached to *dying declarations* depends upon—

   1.  The trustworthiness of those who report them :

   2.  His capacity at the time to remember accurately the past ;

   3.  His disposition to truly tell what he remembers.

It is not necessary that the deceased should have apprehended *immediate* death in order to render his declaration admissible ; but only that he had no expectation of surviving the injury inflicted by the defendant.

INDICTMENT for murder. Heard on defendant's petition for a new trial.

TILLINGHAST, J.  The defendant, Martin Dalton, who, on the 2d day of January, 1896, was convicted of the crime of murder, petitions for a new trial on the grounds :  (1) That the Common Pleas Division had no jurisdiction to try him under the indictment in this case ; (2) That the court erred in matters of law in its rulings ; and (3) That the verdict is against the evidence and the weight thereof.

The indictment was found at the September term, 1892, of the Court of Common Pleas, held in and for the county of Providence.

In support of the first ground above specified, the defendant's counsel says that at the time when the defendant was tried the Court of Common Pleas was an inferior court, having jurisdiction only of such cases as had been expressly conferred upon it by statute, and that its successor, now known as the Common Pleas Division of the Supreme Court, cannot have jurisdiction over an indictment found by the abolished court, unless such jurisdiction has been expressly conferred by statute.  He further says that chapter 3 of the Judiciary Act defines the jurisdiction of the Common Pleas Division, but omits all reference to old indictments then pending in the Court of Common Pleas.

While it is true that said chapter 3 of the Judiciary Act does not refer to indictments then pending in the Court of Common Pleas, yet chapter 38 of the same act expressly provides the manner in which cases pending in the Court of Common Pleas shall be disposed of.  Section 21 of this chapter provides that the Appellate Division shall give directions

to the clerks of the Courts of Common Pleas in the several counties as to what disposition shall be made of all actions, suits and proceedings, civil and criminal, pending in said courts, and to transmit the original papers and records as may be necessary to carry out the provisions of the act. In pursuance of said section an order was duly made by the Appellate Division, and the indictment in question, together with all others then pending in the Court of Common Pleas in this county, was transmitted to the Common Pleas Division of the Supreme Court. And by virtue of section 22 of said chapter 38, the last named court thereupon obtained full jurisdiction of the case. Said section is as follows :—" The supreme court in its respective divisions and the district court to which the said original papers, exhibits and record shall have been transmitted as aforesaid, shall have jurisdiction of all actions, suits and proceedings so transmitted and shall proceed therein in all respects as if the same had been originally brought before such division or court under this act."

The saving clause of the repealed statute is found in section 36, which is as follows : " No offence committed and no penalty or forfeiture incurred under any of the acts hereby repealed and before the time when such repeal shall take effect, shall be affected by the repeal. And no suit, prosecution or indictment pending at the time of said repeal for any offence committed or for the recovery of any fine, penalty or forfeiture incurred under any of the acts hereby repealed, shall be affected by such repeal, except that the proceedings in such suit, prosecution or indictment shall be conformed, whenever necessary, to the provisions of this act."

We therefore decide that the Common Pleas Division had full jurisdiction to try and determine the indictment in question.

The rulings complained of are those relating to the admission of statements made by Anthony S. Haswell, the man who is alleged to have been murdered, as to the persons who injured him, and the manner in which the injury was inflicted. The attorney general contends that the statements were admissible on the ground that they were declarations

made in extremity, when said Haswell was consciously at
the point of death ; while the defendant's counsel insists that
the evidence fails to show that they were so made, and hence
that they were improperly admitted.

William E. Wilson, a witness called in behalf of the prose-
cution, testified that shortly after 8 o'clock, on the evening
of the 19th of July, 1892, he saw a man staggering along in
front of his house on the concrete walk ; that the man looked
as though he had tumbled in the dirt, and witness thought
at first that he was intoxicated.   That the man attracted his
attention, that he showed evidence of being in great pain by
stooping down when he walked, pressing his hands upon his
abdomen and groaning, and that he asked to be allowed to
speak to witness, saying, "Let me tell you."   Witness
further testified that what the man said indicated that he
was apprehensive of impending death from the injuries he
had received.   That while sitting on the step and groaning,
with his hand across his abdomen, the expression of his voice
and countenance plainly showing that he was in great agony,
he said to witness : "They have done the old man up."   "I
wish I could get home."   "I want to get home before I die."
And then said if he could get to the Brook street car he could
get home, and that he seemed impatient to go.   He told wit-
ness that his name was Anthony S. Haswell.   After attempt-
ing to go to the street car and failing, witness testified that
he suffered more acutely, that he lay down on the bank and
was very sick ; and that while there he said again : "They
have done the old man up."   "Take me home."   "I want
to see my wife before I die."   "It is all over with me."
Witness further testified that during all this time the man
seemed to think he was killed, and that he was going to die
from his injuries.   The perspiration came out on his forehead,
and he tried to vomit but could not.   Witness attempted to
assist Mr. Haswell to the Brook street car, but, finding him
too feeble, assisted him to the curbstone, where he left him
and started to telephone to the police station about the man ;
but he made such an outcry at being left alone, and seemed
in such pain, that witness thought it would not do to leave

him. That shortly afterwards blankets were brought from a neighboring house, and he was removed from the curbstone to the bank, where he lay until a wagon was brought, and he was taken to the hospital, where he died at nine o'clock the following morning. .

To the witness Hughes deceased said, while lying on the ground, "I want to be taken to my wife, I will die, I know I will."

To the witness Elizabeth T. Kerr, who was a nurse at the hospital where he was taken, he said several times, shortly after arriving there: "They have killed me, and I am a. goner." "Send for my wife."

In view of the foregoing facts, we think it is clear that the court did not err in allowing the witnesses to testify as to the declarations made by the deceased concerning the persons. who inflicted the injuries upon him which resulted in his. death, and also as to the manner of said injuries. In order to render the statements of the deceased admissible as a. *dying declaration*, it was only necessary to show to the satisfaction of the *court*, in the first instance, that it was made under sense of impending death; Wharton Crim. Ev. § 297 ; the rule as to the admissibility of a dying declaration being that it is enough if it satisfactorily appears, in any mode, that it was made under the sanction of impending death, whether this be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to to ascertain the state of the declarant's. mind. Greenl. Ev. 15 ed. § 158 ; Wharton's Crim. Ev. 8 ed. §§ 282, 293. After the evidence is admitted, however, its. credibility is entirely for the jury, who are at liberty to weigh all the circumstances under which the declarations. were made, including those already proved to the court, and. to give the testimony only such credit as, upon the whole, they may think it deserves. *Com.* v. *Casey*, 11 Cush. 417-21. The weight to be attached to dying declarations, as laid down. by Mr. Wharton in his work on Criminal Evidence, § 276,.

depends upon these conditions :  (1) "The trustworthiness of the reporters ; (2) The capacity of the declarant at the time to remember accurately the past ; and (3) His disposition truly to tell what he remembers." In view of the exceptional character of such testimony and of its liability to perversion, we think these tests are reasonable and proper ; and the record before us in the case at bar shows that they were substantially applied to the testimony in question. In ruling in the declaration, alleged to have been made by the deceased, "They have done me up," the court said :  "The jury may draw their inferences from what was said as to what the man meant by that expression, being in the condition he was at the time, and suffering as he was." . . . . . . "To make it admissible the man should have apprehended immediate death ; and anything he said which convinces the jury that he did apprehend it is sufficient to allow the State to put it in." . . . . . . "If he believed he was in the immediate presence of death—was about to die—and made this declaration, then it is proper to show it." This was even more favorable to the defendant than he was entitled to, because it was not necessary that the deceased should have apprehended *immediate* death in order to render his declarations admissible ; but only that he had no expectation of surviving the injury inflicted by the defendant.    Am. & Eng. Ency. L. vol. 9, pp. 679-82 and cases cited.

The record also shows that the jury were properly instructed as to the credibility of the witnesses who testified as to the declarations of the deceased, and as to the probabilities of the truthfulness of said declarations.

We are therefore of the opinion that the court did not err in admitting the testimony as to the declarations of the deceased, and the exceptions relating thereto are overruled.

After a careful examination of the evidence in the case, we are not convinced that it is insufficient to sustain the verdict. The testimony of the defendant Sullivan, who had previously been convicted of the same crime and was serving a life sentence in the State prison therefor, was properly admitted,

and it was, for the jury to give it such weight, in connection with the other testimony offered, as they thought it deserved.

Petition denied and dismissed, and case remitted to the Common Pleas Division for further proceedings.

*Edward C. Dubois, Attorney General,* for the State.

*Dennis J. Holland & John M. Brennan,* for defendant.