STATE

. v.

David MEDINA.

No. 99–107–C.A.

Supreme Court of Rhode Island.

Feb. 15, 2001.

————

Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on January 22, 2001, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

On May 25, 1998, Officer Scott Salois (Officer Salois) of the Pawtucket Police Department responded to a 911 call at 312 Middle Street in Pawtucket for a domestic dispute involving Alice Bigelow (Bigelow) and David Medina (defendant). According to a Domestic Violence/Sexual Assault Reporting Form, this was not the first dispute between Bigelow and defendant. In fact, Bigelow had been assaulted several times by defendant over the previous four to five months.

In response to the current dispute, Officer Salois, upon arriving at Bigelow's home, was met by Bigelow, who "came to the door yelling and crying." According to the officer, Bigelow said that defendant became upset with her after she poured out his beer. According to Officer Salois, Bigelow said that as she left the kitchen, after pouring out defendant's beer, defendant threw a beer bottle at her, striking her in the back. Bigelow further told the officer that when she returned to the kitchen, defendant threw her against the wall, causing her to strike the back of her head against the kitchen wall. Bigelow said she then picked up a bat and swung it at defendant. After freeing herself from defendant, Bigelow called 911. The defendant then fled. However, he later surrendered to police.

The defendant was charged with two felony counts. Count 1 of the criminal information alleged that defendant assaulted Bigelow after having been previously convicted of domestic assault on two prior occasions in violation of G.L.1956 § 11–5–3 and G.L.1956 § 12–29–5. Count 2 alleged that defendant assaulted Bigelow with a dangerous weapon (beer bottle) in violation of § 11–5–2.

On January 26, 1999, the case was ready for trial. At the start of the trial, the trial justice conducted a personal *voir dire* of Bigelow. Bigelow informed the trial justice that she did not wish to testify. She also recanted several of her statements previously made to Officer Salois. Bigelow confirmed that defendant threw her against the wall but denied that the beer bottle thrown by defendant actually hit her. Bigelow also said that "[defendant was not] the only one at fault," that she also "smashed him and scratched his face." Bigelow said that the 911 call was made to get defendant in trouble, not because she was in fear of defendant. The defendant made an oral motion to dismiss. The justice granted the motion to dismiss. The state appealed.

The state argues that the trial justice erred in determining that Bigelow was unavailable to testify and that he could not compel her to testify. Secondly, the state argues that the trial justice erred in concluding that defendant's Sixth Amendment right to confrontation would be violated if there were a trial on the merits using the police reports without Bigelow's actual testimony. Finally, the state argues that the trial justice should have determined whether Bigelow's statements fell under the excited utterance exception to the hearsay rule.

The state argues that the trial justice's failure to order Bigelow to testify on pain of contempt qualified her as an available witness. The trial justice did not specifically order the witness to testify through exercise of his contempt power. Rather,

he concluded that she would not testify and to force her to testify would be futile. Rule 804 of the Rhode Island Rules of Evidence provides in pertinent part:

"(a) *Definition of unavailability.* 'Unavailability as a witness' includes situations in which the declarant—

\* \* \*

(2) persists in refusing to testify concerning the subject matter of his statement *despite an order of the court to do so* \* \* \*." (Emphasis added.)

This Court in *State v. Grossi,* 588 A.2d 607 (R.I.1991), found that an alleged coconspirator who invoked his Fifth Amendment privilege when called to testify, and who continued to refuse to testify even after he had been granted immunity, was "unavailable" within the meaning of the hearsay rules and, therefore, it was appropriate to allow a detective to testify about statements made to him by an alleged coconspirator at the time of the arrest. *Id.* at 608. *See also* Rule 804(a)(2); 2 *McCormick on Evidence,* ch. 24, § 253 at 132 (Strong, 4th ed.1992) ("[i]f a witness simply refuses to testify, despite the bringing to bear upon him of all appropriate judicial pressures, the conclusion that as a practical matter he is unavailable can scarcely be avoided, and that is the holding of the great weight of authority").

■ It is well-settled that a witness who refuses to testify is unavailable. However, a trial justice should exhaust the remedies available to compel a witness to testify so that the court can attempt to avoid the necessity of relying on out-of-court statements. *See United States v. Oliver,* 626 F.2d 254, 261 (2d Cir.1980). In *Oliver,* the court held that an order to testify from the court is an essential component in a declaration of unavailability under Rule 804(a)(2). *See* 626 F.2d at 261. If nothing less, such an order forces the witness to think of the consequences of refusing to testify. *See id.* In the instance case, the trial justice stated "[w]hy would I hold her in contempt? She doesn't want to testify. \* \* \* Can I order

her to testify?" We conclude that the trial justice should have ordered the witness to testify for purposes of determining her unavailability.

■ Next, the state argues that the trial justice erred in dismissing the information on the basis that defendant would not have the opportunity to confront the witness presented against him. A criminal defendant is afforded the right to confront witnesses offered against him or her by the Sixth Amendment to the United States Constitution. *See State v. Scholl,* 661 A.2d 55, 58 (R.I.1995) (citing *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). In *State v. Hannagan,* 473 A.2d 291, 293 (R.I.1984), this Court stated that where the unavailability of a hearsay declarant is relied upon by the state to introduce out-of-court statements against a criminal defendant, the right of confrontation assured by the Sixth Amendment to the United States Constitution and by article 1, section 10, of the Rhode Island Constitution may place a higher burden of proof on the prosecution to show that the witness is unavailable and that there is "a genuine necessity" for the use of the statements. However, "[t]he strict requirement of confrontation in the Sixth Amendment [should be] tempered by the dictates of practicality and judicial economy." *Scholl,* 661 A.2d at 59 (quoting *State v. Burke,* 574 A.2d 1217, 1222 (R.I.1990)). "When hearsay evidence is sought to be introduced the defendant's right to confrontation is, therefore, examined on a case-by-case basis, and hearsay evidence will be admitted only if it is found to be sufficiently reliable." *Scholl,* 661 A.2d at 59.

It seems clear that hearsay evidence, as long as it is deemed reliable, can replace a witness's actual appearance without violating the defendant's Sixth Amendment right to confrontation. "It is well settled \* \* \* that not every extrajudicial declaration admitted at trial violates the Sixth Amendment." *State v. Manocchio,* 497

A.2d 1, 7 (R.I.1985) (citing *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713, 723 (1979)).

In a case factually similar to the instant case, *State v. Krakue*, 726 A.2d 458, 462 (R.I.1999), the defendant argued that his Sixth Amendment right to confrontation was violated when the court admitted into evidence an out-of-court statement by the defendant's wife, who refused to testify, because her statements to the police constituted excited utterances. We rejected that contention, holding that admissions of the wife's excited utterances pursuant to Rule 803(2) did not violate the right of confrontation under either the state or federal constitution. "Given that the statements of the defendant's wife fell within a recognized hearsay exception, those statements [were] deemed reliable." *Krakue*, 726 A.2d at 463.

■ Here, the trial justice failed to determine whether the statements made by Bigelow to Officer Salois constituted an excited utterance or spontaneous exclamation. Certainly, the trial justice should have made that determination. Moreover, the trial justice intimated that even if such statements qualified as excited utterances, their admission would violate defendant's Sixth Amendment right.[1] However, with respect to the admissibility of an excited utterance, unavailability is not a requirement. R.I.R.Evid. 803. "The unavailability requirement also establishes a 'hierarchy of hearsay.' Hearsay falling within Rule 803's exceptions is regarded as inherently more trustworthy than hearsay falling within Rule 804's exceptions, and thus is admissible without regard to the declarant's unavailability." R.I.R.Evid. 804 advisory committee's notes at 1038. "The rationale for the excited utterance or spontaneous exclamation exception is that a startling event may produce an effect that temporarily stills the declarant's capacity of reflection and produces statements free of conscious fabrication." *Krakue*, 726 A.2d at 462 (quoting R.I.R.Evid. 803(2) advisory committee's notes).

The defendant argues, however, that Bigelow made statements before the trial justice that were contradictory to those statements given to Officer Salois, which thereby undermines the reliability of the original statements. However, this Court has held that even contradictory statements do not necessarily undermine the reliability of an excited utterance. *See State v. Oisamaiye*, 740 A.2d 338, 340 (R.I. 1999) (apparently contradictory statements made at a later time did not undermine initial reliability and trustworthiness of victim's original statement where evidence showed victim made original statement while extremely upset, shaking, speaking loudly, and laboring under the stress of a startling event).

■ In the instant case, the evidence indicates that the justice could have determined that Bigelow's statements were made while laboring under the stress of a startling event. The evidence shows that Bigelow was yelling, crying, shaking, and nervous at the time she made the statements to Officer Salois. The admissibility of an excited utterance is obviously within the trial justice's discretion and "any decision made by a trial justice concerning the admission of excited utterances shall not be overturned unless clearly wrong." *Krakue*, 726 A.2d at 462 (quoting *State v. Perry*, 574 A.2d 149, 151 (R.I.1990)). The trial justice in the instant case should have at least examined the statements to deter-

1. The trial justice stated:
"There is a school of thought that says a police officer goes to respond to a 911 call and he can establish that the alleged victim was hysterical and getting into excited utterances that could be sufficient evidence to go to a jury on. But I also feel that if this witness refuses, Miss Bigelow, to testify and the Defendant's Sixth Amendment rights would be violated. He would not be allowed to cross-examine what she told the police officer. She can cross-examine the police officer but what he heard would be repeating what he heard from the alleged victim."

mine whether they constituted excited utterances and whether they were sufficiently reliable and trustworthy to be admitted pursuant to Rule 803. Our holding in *Krakue* clearly indicates that Bigelow's statements would in all likelihood have qualified for admission as excited utterances. *See* 726 A.2d at 462–63.

 On the facts of this case, the trial justice was clearly in error in dismissing the information charging the defendant with felony assault and battery. He had no authority under the Superior Court Rules of Criminal Procedure to dismiss a case without allowing the state to proceed with the presentation of evidence in support of its charges. The mere unwillingness of a complaining witness to testify does not justify the dismissal of an information or indictment. The trial justice must permit the state to present such evidence as it may have, including statements that are admissible under Rule 803 or other evidence that may qualify as exceptions to the hearsay rule. The state may present evidence in corroboration, such as the officer's observations when responding to the scene. The trial justice may then evaluate the weight of such evidence in light of the state's burden of proof. Under no circumstances may a justice dismiss an information or indictment without allowing the state to present its evidence.

For the foregoing reasons, the appeal of the state is sustained, the judgment is vacated, and the papers of the case are remanded to the Superior Court for further proceedings not inconsistent with this opinion.

Justice BOURCIER did not attend oral argument, but participated on the basis of briefs.