DECISION
In the above-captioned asbestos action, one of the multiple corporate defendants, Kaiser Gypsum Company, Inc. (Kaiser), has moved for summary judgment pursuant to Super. R. Civ. P. 56. Plaintiff Phyllis Quackenbos, in her Capacity as Administratrix of the Estate of Robert Quackenbos (Mr. Quackenbos), and Individually as his Surviving Spouse, objects to the motion. Jurisdiction is pursuant to Super. R. Civ. P. 56 and G.L. 1956 § 8-2-14.[1]
 I Facts and Travel
The Plaintiffs first filed an asbestos action in Madison County, Illinois, in a predecessor case. During the course of discovery, Mr. Quackenbos was deposed. He testified that from 1955 to the early 1980s, during his career as a carpenter, he had been exposed to asbestos-containing sheetrock and joint compound manufactured by Kaiser. Kaiser was not a party defendant in that case. The Illinois Court subsequently dismissed the action on grounds of forum nonconveniens. *Page 2 
On December 3, 2004, the Plaintiffs filed the instant action in this Court against various corporate defendants, including Kaiser. They alleged, inter alia, that Mr. Quackenbos suffered numerous asbestos-related injuries, including malignant mesothelioma, as a result of exposure to asbestos and asbestos-containing materials between 1948 and 1987. Mr. Quackenbos died on December 27, 2004, before he could be deposed in the present action. Kaiser now seeks summary judgment.
 II Standard of Review
The granting of a Motion for Summary Judgment will be affirmed "if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Avila v. Newport Grand Jai Alai LLC, 935 A.2d 82, 95 (R.I. 2007) (citing Woodland Manor III Associates v. Keeney, 713 A.2d 806, 810 (R.I. 1998)). During a summary judgment proceeding, "the [C]ourt does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992).
Accordingly, the Court "must look for factual issues, not determine them. The [court's] only function is to determine whether there are any issues involving material facts." Steinberg v. State, 427 A.2d 338, 340
(R.I. 1981). The opposing party "carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Avila, 935 A.2d at 95 (quotingTaylor v. Mass. Flora Realty, Inc., 840 A.2d 1126, 1129 (R.I. 2004)). *Page 3 
 III Analysis
Kaiser raises two issues in support of its Motion for Summary Judgment. Kaiser first contends that G.L. 1956 § 9-1-29, a Statute of Repose, provides it with immunity from suit because the Plaintiffs failed to bring their action within ten years after the substantial completion of improvements to real property. The Plaintiff contends that the Statute of Repose is inapplicable in this case.
Next, Kaiser contends that the deposition testimony of Mr. Quackenbos is inadmissible against Kaiser because it never had an opportunity to cross-examine Mr. Quackenbos, and because the testimony does not fit within any exception to the hearsay rule. Kaiser contends that because this inadmissible testimony is the only evidence to suggest that Mr. Quackenbos was exposed to Kaiser manufactured products, it is entitled to Judgment as a Matter of Law. The Plaintiff counters that the deposition statements are admissible.
At a hearing on the motion, the parties rested on their briefs with respect to the evidentiary issues. However, counsel for the parties did argue the applicability of the Statute of Repose.
 A The Statute of Repose
Kaiser asserts that § 9-1-29 provides it with immunity from suit because Plaintiffs failed to file their action within the mandatory ten years after the substantial completion of improvements to real property. In response, the Plaintiff maintains that the Legislature did not intend to protect manufacturers who incorporate dangerous materials into their products. She further asserts that for purposes of the Statute of Repose, Kaiser did not "furnish" materials for use in construction or improvements. *Page 4 
The ultimate goal of statutory interpretation "is to give effect to the General Assembly's intent." State v. Andujar, 899 A.2d 1209, 1215
(R.I. 2006). The plain language employed in a statute constitutes the best evidence of the General Assembly's intent. See id. Accordingly, where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. ofEmployees' Retirement System of State v. DiPrete, 845 A.2d 270, 297
(R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id.
Conversely, where the language of a statute is unclear or ambiguous, the Court "examine[s] the entire statute to ascertain the intent and purpose of the Legislature." Trant v. Lucent Technologies, 896 A.2d 710,712 (R.I. 2006). In conducting such an examination, the Court is required to "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Id. Finally, the Court "cannot interpret a statue in a way that will lead to an absurd result." Pastore v. Samson,900 A.2d 1067, 1083 (R.I. 2006).
The Statute of Repose at issue in this case is § 9-1-29. The purpose of this statute is to "require that individuals seeking recovery in tort against constructors of improvements to real property must bring an action within ten years of the substantial completion of the improvement." Qualitex, Inc. v. Coventry Realty Corp., 557 A.2d 850, 852
(R.I. 1989). The Legislature enacted this statute after "the extinction of the doctrine of privity[,]" in an attempt "to shield `architects, professional engineers, contractors, subcontractors, and materialmen' and to provide them with a reasonable limitation on their greatly expanded potential liability." Id. At 852-53 (quoting Walsh v.Gowing, 494 A.2d 543, 546 (R.I. 1985)). In contrast to "a statute of *Page 5 
limitations, which `bars a right of action unless the action is filed within a specified period after an injury occurs [,] . . . a `statute of repose terminates any right of action after a specific time has elapsed. . . .'" Theta Properties v. Ronci Realty Co., Inc.,814 A.2d 907, 913 (R.I. 2003) (quoting Salazar v. Machine Works, Inc.,665 A.2d 567, 568 (R.I. 1995)).
Section 9-1-29 provides:
 "No action . . . in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property, or against any contractor or subcontractor who constructed the improvements to real property, or material suppliers who furnished materials for the construction of the improvements, on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for the improvements: (1) For injury to property, real or personal, arising out of any such deficiency; (2) For injury to the person or for wrongful death arising out of any such deficiency; or (3) For contribution or indemnity for damages sustained on account of any injury mentioned in subdivisions (1) and (2) hereof more than ten (10) years after substantial completion of such an improvement. . . ." Section 9-1-29.
Thus, the purpose of the statute is to "immunize construction contractors — as well as others who construct, furnish materials for, or provide professional services in connection with improvements to real property — against tort claims that have not been brought within ten years of the improvement's substantial completion." Nichols v. R.R.Beaufort Associates, Inc., 727 A.2d 174, 176 (R.I. 1999).
The Rhode Island Supreme Court has had occasion to interpret the meaning of the word "improvements" as contemplated by the Statute of Repose. It defines an improvement as
 "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Desnoyers v. Rhode Island Elevator Co., 571 A.2d 568, 570 (R.I. 1990) (quoting Black's Law Dictionary 890 (rev. 4th ed.1968)). *Page 6 
See also Boghossian v. Ferland Corp., 600 A.2d 288, 289 (R.I. 1991) (stating that § "9-1-29 applies to an action for damages for breach of a contract to improve real property); Desnoyers v. Rhode Island ElevatorCo., 571 A.2d 568, 570 (R.I. 1990) (holding that the installation of a freight elevator "constituted, as a matter of law, the construction of an improvement to real property within the meaning of § 9-1-29");Qualitex, Inc. v. Coventry Realty Corp., 557 A.2d 850, 852 (R.I. 1989) (holding that a fire-sprinkler system is an "improvement to real property" for purposes of the statute); Allbee v. Crane Co.,644 A.2d 308, 308 (R.I. 1994) (Mem.) (installation of a turbine pump constituted an improvement).
In Qualitex, Inc., the Supreme Court acknowledged that other jurisdictions "have consistently found heating, refrigeration, and electrical systems to be improvements to real property."557 A.2d at 852. In that case, the Court discussed whether defendant ITT Grinnell was a manufacturer within the class of persons protected by § 9-1-29. Qualitex alleged that "Grinnell Corporation, a predecessor in interest to ITT Grinnell, designed, manufactured, sold and installed the [allegedly defective] sprinkler unit." Qualitex, 557 A.2d at 851. In discussing the term "manufacturer," the Supreme Court observed that § 9-1-29
 "does not expressly exclude manufacturers or any particular class from its operation. The language of the statute was broadly written, and it is clear that the Legislature intended a broad application. Although terms must be given their plain and ordinary meaning, [i]f a mechanical application of a statutory definition . . . defeats legislative intent, this court will look beyond mere semantics and give effect to the purpose of the act. In this context the statute must be read to include manufacturers. Manufacturers, just like architects, engineers, contractors, and subcontractors, need protection from individuals whose negligence in maintaining an improvement to real property may cause liability." Qualitex, 557 A.2d at 853 (internal citation and quotations omitted).
The Supreme Court then observed that not only did ITT Grinnell qualify as a manufacturer for purposes of § 9-1-29, but that because it had designed, manufactured, inspected and installed the *Page 7 
allegedly defective product, it also qualified as a "material man" under the Act. See id. ("As manufacturer, installer, and supplier, ITT Grinnell, we find, is a material man for purposes of § 9-1-29.") (Emphasis added.)
The Supreme Court defined the term material man "as one who `furnish[es] materials or supplies used in the construction or repair ofa building [or] structure.'" Qualitex, Inc. v. Coventry RealtyCorp., 557 A.2d at 853 (R.I. 1989) (emphasis added) (quotingBlack's Law Dictionary 881 (West 5th ed.1979)). It is noteworthy that this definition refers to buildings and structures in the singular rather than in the plural. Juxtaposing this definition with the Supreme Court's conclusion that Grinnell was a material man for purposes of the Act because it manufactured, installed, and supplied its product, the Court concludes the Legislature did not intend to protect manufacturers and suppliers of products who were not somehow directly involved in specific construction or improvement projects. To interpret otherwise essentially would eviscerate § 9-1-29 because it would serve to protect every manufacturer and/or supplier whose products may have been used in construction or improvement projects, regardless of how far removed such manufacturer was from the process, and irrespective of how peripheral its products may have been to those projects.
Furthermore, although § 9-1-29 concerns a Statute of Repose, this Court finds that the Legislature did not intend for such a provision to protect manufacturers who might misrepresent or conceal the safety of their products that they supply to wholesalers and retailers, while knowing that such misrepresentation or concealment poses a safety risk to users of their products. See § 9-1-20.[2] Such a conclusion is bolstered by the Legislature's obvious concern for *Page 8 
individuals suffering from asbestos-related disease. See G.L. 1956 § 23-24.5-15(c).[3] Consequently, it is unlikely that the Legislature intended that the Statute of Repose shield manufacturers who potentially may have misrepresented or concealed the safety of their products that they supplied to wholesalers and retailers.
In the instant matter, there exist genuine issues of material fact as to whether Kaiser was involved directly in the installation of its products that allegedly contained asbestos and to which Mr. Quackenbos allegedly was exposed. There also exist genuine issues of material fact as to whether Kaiser directly supplied Mr. Quackenbos with said allegedly defective products. Consequently, Kaiser's Motion for Summary Judgment on this issue is denied.
 B The Deposition
On August 5, August 6, and September 21, 2004, Mr. Quackenbos was deposed by videotape in the Illinois action. During the deposition, Mr. Quackenbos stated that he had been exposed to Kaiser-manufactured products and that he believed that such products contained asbestos. Specifically, he testified that the Kaiser products with which he had worked were sheetrock and joint compound.
Kaiser asserts that the foregoing statements are inadmissible because they do not qualify as a hearsay exception under Rule 804(b)(1) of the Rhode Island Rules of Evidence.[4] Kaiser *Page 9 
maintains that because it was not a defendant in the Illinois action, it was denied an opportunity to cross-examine Mr. Quackenbos concerning his statements. Kaiser concedes that Mr. Quackenbos was subjected to cross-examination by defense counsel in the Illinois case; however, it contends that the other defendants did not have a "similar motive or interest" to that of Kaiser, and that said cross-examination did not concern Kaiser-manufactured products. Indeed, it avers, the motives and interests of the other parties could be considered adverse to those of Kaiser.
The Plaintiff asserts that even if the statements are inadmissible under Rule 804(b)(1), nevertheless, other exceptions to the hearsay rule apply. Specifically, she contends that the statements are admissible pursuant to Rule 804(b)(2) ("Statement Under Belief of Impending Death"), Rule 804(c) ("Declaration of Decedent Made in Good Faith"), and Rule 804(b)(5) ("Other Exceptions).
In civil actions or proceedings, the hearsay rule does not exclude statements made by an unavailable witness where the statements are "made by a declarant while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death." Rule 804(b)(2) of the Rhode Island Rules of Evidence. The Advisory Committee's Note to Rule 804(b)(2) states that "[t]he rationale for this exception is (a) necessity, and (b) a belief that impending death induces a person to speak the truth." There exist various methods to determine whether a declarant made statements under belief of imminent death. See State v. Scholl, 661 A.2d 55, 59 (R.I. 1995). "First, the declarant's state of mind can be directly proved by his or her express language." Id. "In addition to or in the absence of direct *Page 10 
statements by the declarant, the surrounding circumstances may permit an inference regarding the declarant's state of mind." Id. at 60. Finally, "[a] dying declarant's state of mind may also be inferred when the declarant hears statements regarding his or her medical condition."Id.
In the instant matter, Mr. Quackenbos was suffering from end-stage mesothelioma. In his deposition testimony, Mr. Quackenbos acknowledged that doctors had told him that his condition was "incurable, inoperable. . . ." Deposition of Mr. Quackenbos dated September 21, 2004, at 11-12. He later testified that he was unable to plan "far ahead that I could say I can be there in three months or whatever."Id. Just over three months later, on December 27, 2004, Mr. Quackenbos died.
In light of the foregoing statements and surrounding circumstances, the Court finds that Mr. Quackenbos believed that he was facing imminent death and that he also believed that his imminent death was as a result of his exposure to asbestos. The fact that his death was not until three months later is of no matter, because Rule 804(b)(1) "does not require that death actually occur as long as the declarant is unavailable. . . ." Advisory Committee's Note.
The reason death is not required is that "the death requirement does not enhance `the trustworthiness of the statement while [it operates] to exclude valuable evidence in some cases. It is the guarantee of trustworthiness at the time the statement is made, rather than at the time of the use that makes the statement reliable.'" Id. (quoting 4Weinstein's Evidence para. 804(b)(2)[01] at 805-82 (1979)). Consequently, the Court concludes that the sworn deposition testimony given by Mr. Quackenbos is admissible pursuant to Rule 804(b)(2) of the Rhode Island Rules of Evidence as a dying declaration.
However, even if Rule 804(b)(2) was inapplicable, the statements are admissible pursuant to Rule 804(c) of the Rhode Island Rules of Evidence, entitled "Declaration of Decedent Made in Good Faith." It provides: "A declaration of a deceased person shall not be inadmissible in *Page 11 
evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." Rule 804(c) of the Rhode Island Rules of Evidence. Under this three-prong test, the Court must find that Mr. Quackenbos made his statements (1) in good faith; (2) before the commencement of the action; and, (3) upon his personal knowledge.
Prior to the promulgation of Rule 804(c), the principle was codified by G.L. 1956 § 9-19-11.[5] The Rhode Island Supreme Court has held that § 9-19-11
 "was intended to give a trial court a wide discretion in allowing testimony to be adduced thereunder and that for the purpose of promoting the ends of justice the statute should be liberally applied. The testimony as to what the [decedent] dockmaster said is clearly material and relevant, and had he been alive at the time of the trial, it would have been admissible. In such circumstances we cannot say that the trial justice abused the discretion vested in him by the statute in permitting [a marine surveyor] to testify as he did." Waldman v. Shipyard Marina, Inc., 102 R.I. 366, 369, 230 A.2d 841, 845 (R.I. 1967) (internal citation omitted).
In later discussing Rule 804(c), the Rhode Island Supreme Court has held that "when the hearsay declarant is not present for cross-examination, the admissibility of an out-of-court statement turns on whether the statement bears adequate `indicia of reliability,' which, in the case of a `firmly rooted hearsay exception,' simply can be inferred without further inquiry." State v. Feliciano, 901 A.2d 631, 639-40 (R.I. 2006) (quoting State v. Burke, 574 A.2d 1217, 1223 (R.I. 1990)).
In the present case, Mr. Quackenbos, testified under oath at a time of his impending death. That oath required him to tell the truth, and there is no evidence in the record to suggest that he did not so testify. Consequently, the Court accepts that Mr. Quackenbos testified truthfully and in good faith. With respect to the second prong of the three-prong test, it is *Page 12 
undisputed that Mr. Quackenbos testified before the commencement of the instant action against Kaiser; as a result, the second prong is satisfied. The third prong, that the statements be made upon the personal knowledge of the declarant, is also satisfied because the statements given by Mr. Quackenbos concerned knowledge of his direct actions and observations. Consequently, Rule 804(c) provides a second basis for admitting the statements at trial. Of course, once admitted, Kaiser is free to rebut the statements during the presentation of its defense. In light of this conclusion, the Court need not address the applicability of the "Other Exceptions" provision contained in Rule 804(b)(5) of the Rhode Island Rules of Evidence.[6]
 IV Conclusion
For the foregoing reasons, the Court denies Kaiser's Motion for Summary Judgment. Counsel shall submit the appropriate order for entry.
[1] Section 8-2-14(a) provides in pertinent part:
 "The superior court shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue, except actions for possession of tenements let or held at will or by sufferance; and shall have exclusive original jurisdiction of all other actions at law in which the amount in controversy shall have exceed the sum of ten thousand dollars ($10,000). . . ."
[2] Section 9-1-20, entitled "Time of Accrual of Concealed Cause of Action," provides:
 "if any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."
[3] Section 23-24.5-15(c) provides:
 "Notwithstanding any other law to the contrary, the statute of limitations for any personal injury or property damage relating to asbestos or asbestiform materials for any cause of action now pending or which may be pending in the future shall not begin to run until notice to the patient or the patient's next-of-kin is filed. . . ."
[4] Rule 804(b)(1) provides:
 "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (1)Former Testimony. Recorded testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with similar motive and interest had an opportunity to develop the testimony by direct, cross, or redirect examination."
[5] Section 9-19-11 provided "that a declaration of a deceased person shall not be inadmissible as hearsay when the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." Waldman v. Shipyard Marina,Inc., 102 R.I. 366, 368, 230 A.2d 841, 843 (1967).
[6] Rule 804(b)(5) of the Rules of Evidence provides:
 "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Rule 804(b)(5) of the Rules of Evidence. *Page 1