STATE

v.

**David M. LYNCH.**

No. 98–15–C.A.

Supreme Court of Rhode Island.

May 4, 2001.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

James T. McCormick, Providence, for Defendant.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on March 12, 2001, on appeal from the conviction of David M. Lynch (defendant or Lynch) of robbery in the first degree, assault with a dangerous weapon, robbery in the second degree, and escape from lawful custody of a police officer. We affirm.

### Facts and Travel

On September 19, 1994, twenty-three-year-old Joanne Park (Ms. Park or victim) and her younger sister, Jennifer, then both residents of California, were traveling by automobile through Rhode Island, from Prince Edward Island, Canada, to New York. Unfortunately, their brief stop in Providence was anything but hospitable. At approximately 7:30 p.m., the two young women stopped at Kelly's gas station on Charles Street in Providence to inquire about local hotels and to purchase various items. When Ms. Park returned to her car, she noticed a young man sitting on the curb, with his back to her, about five feet from the driver's side door. As Ms. Park entered the automobile, she was suddenly attacked by the man, later identified as Lynch, who had been seated at the curb. Before she could close the door, the assailant held a knife to her throat and demanded her backpack. At this point, Ms. Park testified that she was in shock and just stared at her attacker for ten to fifteen seconds. The defendant continued to de-

mand her backpack, and eventually reached into the car, grabbed the backpack and ran. At that point, Jennifer got out of the car and screamed for help; Ms. Park, knowing that the backpack contained two cameras, her credit cards and checks, and their airline tickets and passports, began to chase her assailant on foot. Ms. Park continued to pursue defendant until he suddenly turned around and ran toward her. When items began to fall out of the backpack, Lynch dropped the backpack and continued to run. Ms. Park collected her belongings and awaited the arrival of the police.

Meanwhile, Officer Joseph Gallucci (Officer Gallucci) of the Providence Police Department received a radio dispatch reporting the events at Kelly's gas station. He was further informed that the suspect had been apprehended in the parking lot of the nearby post office. Upon arriving at the post office, Officer Gallucci observed several individuals surrounding a man who was lying on the ground. Officer Gallucci testified that at this point defendant was bleeding, and "was almost to the extent of being passed out." Officer Gallucci was immediately approached by Joseph Pari (Pari), one of the individuals at the scene. Pari, described by the officer as being excited and out of breath, immediately disclosed that "the man lying on the ground had just assaulted someone at Kelley's [Shell] station." Pari explained that he witnessed the incident and chased Lynch to the post office parking lot where, when he finally caught him, a struggle ensued. Pari further stated that during the struggle defendant stabbed him in the hand and threw the knife into some nearby shrubbery.

Officer Gallucci then assisted Lynch to his cruiser and deposited defendant in the back seat without handcuffs or other restraint. Officer Gallucci then proceeded to search the area where defendant had thrown the weapon that was used to stab Pari and rob Ms. Parks.[1] The officer returned to his car to inform the other units that he had apprehended Lynch. Officer Gallucci then planned to proceed to Kelly's gas station, with Lynch, for a "showup" identification. However, before he was able to leave the post office, a rescue vehicle arrived; Officer Gallucci exited his cruiser, leaving the keys in the ignition and the engine running. As Officer Gallucci was speaking with the rescue personnel, he heard the motor racing in his cruiser. Lynch had climbed into the front seat of the car and was attempting to escape. However, the cruiser was equipped with a mechanism that required the operator to depress the brake in order to put the car into gear; thus preventing defendant from fleeing immediately. When Officer Gallucci was approximately five feet from the vehicle, Lynch managed to engage the gear and put the car into drive. Officer Gallucci immediately drew his service pistol "at which time the left front end [of the vehicle] struck my left knee. I grazed off the police vehicle and fired one round into the left front driver's door as it was passing me." The defendant was arrested about two tenths of a mile up the road, after he unceremoniously connected with a utility pole.

Although Ms. Park left Rhode Island the day after the incident to return to California and then begin work as a missionary in Mongolia, she returned to Rhode Island to testify before the grand jury and at trial. Ms. Park previously had described her assailant as a Caucasian male with brown hair, dark eyes, stubbled

---

1. At trial, Ms. Park recognized the knife recovered by Officer Gallucci as the one used by defendant the evening of September 19, 1994.

beard, slim build, approximately five-feet nine inches in height, and wearing a dark long-sleeved shirt. Before appearing in front of the grand jury, Ms. Park was shown a photo array consisting of six photographs, and identified Lynch as the man who attacked her. On December 8, 1994, a ten-count indictment against David M. Lynch was filed in the Superior Court.[2]

Following a jury trial in the Providence County Superior Court, defendant was convicted of the robbery of Ms. Park in the first degree, assault upon Officer Gallucci with a dangerous weapon, robbery of Officer Gallucci in the second degree, and escape from lawful custody of the Providence Police. The defendant's motion for a new trial was denied. On appeal, the defendant has raised numerous issues, some of which were not appropriately preserved for appellate review. This Court will address only those issues that we deem central to this appeal.

### Identification

The defendant has raised two issues relative to the identification made by the victim. Lynch contended that the trial justice erred in denying his motion to suppress Ms. Park's identification testimony, and further, that the trial justice then incorrectly instructed the jury relative to that identification.

■ The law in Rhode Island with respect to identification procedures employed by the police is well settled. In order to insure that an out-of-court identification does not violate a defendant's due process rights, this Court has set forth a two-pronged analysis. *See State v. Mastracchio*, 612 A.2d 698, 704 (R.I.1992). The first step is to determine "whether the

identification procedure used was unnecessarily suggestive." *State v. Gardiner*, 636 A.2d 710, 715 (R.I.1994). The trial justice need not proceed to the next step of the analysis—whether the identification lacks independent reliability despite the procedure's suggestiveness—unless the first part of the test is answered in the affirmative. *Id.* (citing *Mastracchio*, 612 A.2d at 704 and *Manson v. Brathwaite*, 432 U.S. 98, 105–07, 114, 97 S.Ct. 2243, 2248–49, 2253, 53 L.Ed.2d 140, 148–49, 154 (1977); *Neil v. Biggers*, 409 U.S. 188, 198–200, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401, 410–12 (1972)).

■ Here, the trial justice found that the photo array was not unduly suggestive. In denying defendant's motion to suppress the identification, he specifically stated that "on the totality of the circumstances that Miss Park's identification of the defendant from the photo array was reliable and that the procedure employed was not suggestive or conducive to irreparable mistaken identification amounting to a denial of defendant's right of due process." The defendant contended that the procedure was unduly suggestive because the identification was made ten weeks after the incident and that defendant was depicted in the photo array with more facial hair than the other people in the array. Based on a careful review of the record, including an examination of the photo array in question, we agree with the trial justice that the identification procedure employed in this case was not unduly suggestive.

■ We previously have held that the standard employed by this Court when reviewing a pretrial motion to suppress is the clearly erroneous standard, taking the

---

**2.** The first seven counts of the indictment related to the incident on September 19, 1994. The last three counts, however, related to an incident on October 19, 1994, in which Lynch had escaped from the custody of Adult Correctional officers and stole a car. The trial justice granted defendant's motion to sever counts eight through ten.

evidence in the light most favorable to the government. *See State v. Morris,* 744 A.2d 850, 856 (R.I.2000); *see also State v. Gatone,* 698 A.2d 230, 235 (R.I.1997); *State v. Gomes,* 604 A.2d 1249, 1253 (R.I. 1992). Specifically, with respect to the use of a photo array, in order to determine whether such an array poses a substantial risk of misidentification, a comparison must be made between the description of the suspect given by the witness with the general characteristics of each individual featured in the display. *See Gatone,* 698 A.2d at 235. We are satisfied that the photo array displayed to Ms. Park was a fair comparison that in no way infringed upon the due process rights of the defendant. Although the six photos in the array are not mirror images, "look-alikes" are not required. *Id.* at 236. In this case, all the subjects in the lineup had similar builds, hair and skin color, and four of the six men had facial hair, albeit to varying degrees. The lapse of time between the robbery and the identification has no bearing on the issue of suggestiveness of the identification. Such evidence goes to the weight to be accorded the identification, not to the question of suggestiveness. In this case the victim was unable to view a "showup" identification of Lynch at the scene because he stole a police car and smashed it into a utility pole, necessitating his hospitalization. Although Ms. Park and her sister responded to police headquarters that evening to give statements, they left the state the next morning to return home to California. Upon her return to appear before the grand jury, Ms. Park made a positive identification of defendant from the photo array. We glean no evidence from the record demonstrating unnecessary suggestiveness or a substantial likelihood of misidentification, particularly when the victim had an adequate opportunity to observe defendant while he held a knife to her throat and because defendant was immediately apprehended at or near the scene of the crime. *See State v. Austin,* 731 A.2d 678, 681 (R.I. 1999). Accordingly, we affirm the trial justice's denial of defendant's motion to suppress the identification testimony of the victim.

■ With respect to the instruction given to the jury concerning the identification testimony of Ms. Park, defendant contended that the trial justice incorrectly instructed the jury on the law relative to the identification of the defendant. The charge was as follows:

"During this case, the trial of it, an identification was made by a witness of the defendant as the perpetrator of the crime, Joanne Park. The State has the burden of proving identity beyond a reasonable doubt. It is not essential, ladies and gentlemen, that the witness herself be free from doubt as to the correctness of her statement; however, you, the jury, *must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him on any of the charges.* If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crimes charged, you must find the defendant not guilty." (Emphasis added.)

The defendant objected to the charge, stating that it was error not to charge the jury consistent with *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that, in evaluating the testimony of Ms. Park, the jury should "take into account her level of certainty that Mr. Lynch was the perpetrator * * *."[3] We deem this contention to be without merit.

3. The specific jury instruction request made by defendant was as follows: "In evaluating

■ General Laws 1956 § 8–2–38 requires the trial justice to instruct the jury on the law to be applied to the issues raised by the parties.[4] There is no requirement for particular words to be used in a charge. *State v. Mastracchio*, 546 A.2d 165, 173 (R.I.1988). "The trial justice may instruct the jury in his or her own words as long as the charge sufficiently addresses the requested instructions and correctly states the applicable law." *Id.* (citing *State v. Tooher*, 542 A.2d 1084, 1088 (R.I.1988); *State v. Caruolo*, 524 A.2d 575, 584 (R.I.1987); *State v. Burke*, 522 A.2d 725, 736 (R.I.1987); *State v. Lambert*, 463 A.2d 1333, 1338 (R.I.1983)).

We are satisfied that the trial justice charged the jury consistent with the law to be applied in the case. It was not necessary for the trial justice to give the jury the specific charge requested by the defendant. Lynch argued that the trial justice should have included the specific language "that 'the level of certainty demonstrated at the confrontation' is a factor to be considered when determining the reliability of identification testimony." However, the case relied upon by the defendant, *Neil v. Biggers*, set forth the factors to be applied in determining the admissibility of an in-court identification after there has been a showing that the identification procedure was unnecessarily suggestive and evidence of the out-of-court identification has been excluded. The factors outlined in *Neil v. Biggers* are considerations to be employed in evaluating the likelihood of misidentification by the witness because of improper police practices that may have so tainted the identification as to render its admission a denial of due process. An in-court identification still may be allowed when, based upon the totality of the circumstances, the hearing justice is satisfied that the testimony has independent reliability. As stated above, this Court will not prescribe the exact language to be used by a trial justice in formulating his or her instructions, as long as the charge taken as a whole instructs the jury on the law to be applied to the issues in the case. *Mastracchio*, 546 A.2d at 173. Here, the trial justice clearly addressed the identification testimony of the victim when he stated that the "jury must be *satisfied beyond a reasonable doubt of the accuracy of the identification* of the defendant before you may convict him of any charges." (Emphasis added.) Clearly, the level of certainty of the witness may be a relevant consideration, but it is not so essential that its exclusion from the jury charge amounts to reversible error. For the aforementioned reasons, we reject the defendant's argument that admission of the identification testimony of Ms. Park amounted to reversible error. We also reject his challenge to the trial justice's instruction to the jury.

### Oral Statement Made at the Scene

■ We shall next discuss defendant's contention that the admission of Pari's verbal statements made at the scene to Officer Gallucci amounted to reversible error. Lynch maintained that the statement should not have been admitted as a decla-

Joanne Park's testimony, you should take into account her level of certainty that Mr. Lynch was the perpetrator of the crime." *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

4. General Laws 1956 § 8–2–38 provides:
   "**Instructions to jury.**—In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law relating to the action, and may sum up the evidence therein to the jury whenever he or she may deem it advisable so to do; but any material misstatement of the testimony by him or her may be excepted by the party aggrieved."

ration by a decedent made in good faith pursuant to Rule 804(c) of the Rhode Island Rules of Evidence, because the statement lacked substantial reliability based on the circumstances of the incident and the declarant's criminal record.[5]

We previously have held that Rule 804(c) applies in all criminal and civil cases, and is not limited to statements that describe the cause or circumstances of a declarant's impending death, provided that certain constitutional safeguards are met. *State v. Burke*, 574 A.2d 1217, 1222 (R.I. 1990) (citing advisory committee's note to Rule 804(c)). The confrontation clause normally requires that, when the declarant is not present at trial, he or she must be shown to be unavailable. *State v. Scholl*, 661 A.2d 55, 61 (R.I.1995) (citing *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 607 (1980)). Once unavailability has been established, "the out-of-court statements must possess adequate 'indicia of reliability' in order to be admissible." *Scholl*, 661 A.2d at 61.

In the case at bar it was undisputed that Pari, who was killed in a motorcycle accident before the case came to trial, was unavailable. Thus the primary determination for introduction of his statement under Rule 804(c) was a finding that the statement was reliable. Officer Gallucci testified that when he encountered Pari in the parking lot, Pari was excited and was out of breath. Within a minute of Officer Gallucci's arrival on the scene Pari approached him and told him that the man lying on the ground had assaulted someone at Kelley's gas station. Although the trial justice found that the encounter with Officer Gallucci at the post office was "not structured" and the comments made by Pari at the scene "were spontaneous," his articulated reasoning for allowing the statements was that the comments fell "squarely within Rule 804(c)." We have long held that this Court can affirm the judgment of the Superior Court on grounds not actually relied upon by the trial court to justify its ruling. *See Ahlburn v. Clark*, 728 A.2d 449, 452 (R.I.1999) (citing *C & J Leasing Corp. v. Paolino*, 721 A.2d 839, 841 (R.I.1998), and *State v. Nordstrom*, 529 A.2d 107, 111–12 (R.I. 1987)). Based upon Officer Gallucci's description of Pari as excited and out of breath and the trial justice's finding that the exchange was spontaneous and unstructured, we are satisfied that the statement made by Pari at the scene qualifies as an excited utterance under Rule 803(2) of the Rhode Island Rules of Evidence, and thus demonstrates a sufficient indicia of reliability.[6] Further, defendant attempted to impeach the credibility of the declarant by, among other things, introducing into evidence without objection, a significant portion of Pari's previous criminal record as a full exhibit. The jury had the benefit of this information in making a

---

5. **Rule 804(c) of the Rhode Island Rules of Evidence**, *"Declaration of Decedent Made in Good Faith,"* provides: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

6. Rule 803(2) of the Rhode Island rules of Evidence provides: *"Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."* The advisory committee's note following the rule provides that a statement may qualify as an excited utterance if the trial justice is satisfied that when the declarant spoke he or she was operating under the stress or nervousness of the excitement and had no time to reflect upon the statement made. *See also State v. Creighton*, 462 A.2d 980, 983 (R.I.1983) and *In re Daniel*, 456 A.2d 258, 260–261 (R.I.1983).

credibility determination. Having satisfied both steps of the analysis set forth in *Burke* and reaffirmed in *Scholl*, we are thus satisfied that the statement made by Pari at the scene was reliable and its admission did not constitute reversible error.

## Instruction on Flight

█ The defendant also challenged the instruction to the jury with respect to defendant's flight from the scene. Lynch maintained that the trial justice committed reversible error by failing to explain that consciousness of guilt is not the only possible reason for flight. The defendant objected to the instruction concerning flight, stating that in this case there were reasons for flight other than consciousness of guilt. On appeal, defendant suggested that the other possible reason for his flight was the fact that Lynch had been pursued and subsequently beaten by Pari and others and therefore he fled out of concern for his safety. We deem this argument to be without merit.

The evidence of flight in this case was overwhelming. After Lynch robbed Ms. Park at knifepoint he fled the scene and was chased by Ms. Park until he suddenly changed direction and ran back toward her. At this point Pari and others took up the chase. Lynch continued to run until he was finally caught in the post office parking lot, where a violent struggle ensued. While in the cruiser, Lynch again attempted to flee, this time while he was in police custody and secure from any possible threat from Pari or anyone else except the criminal justice system. The instruction on flight was consistent with this evidence, and the jury was appropriately instructed on the process by which a permissible but not mandatory inference of consciousness of guilt of the crime charged could be drawn from evidence of defendant's flight from the scene and from custody. For these reasons, we reject defendant's assertion that the trial justice's instruction on flight constituted reversible error.

## Requested Instruction on Robbery

█ Finally, defendant has argued that the trial justice erred in refusing to give the requested instruction on the robbery of Officer Gallucci's cruiser. In his request, defendant stated:

> "Concerning Count Four, the allegation of robbery of Officer Gallucci's police car, you are instructed that a defendant's use of force to retain property already peacefully taken, or to attempt to escape, is not the force essential to satisfy the element of force required for robbery. *State v. Holley*, 604 A.2d 772, 774 (R.I.1992)."

Lynch argued that the omission of this instruction amounted to reversible error. We disagree.

In *State v. Holley*, 604 A.2d 772, 774 (R.I.1992), this Court recognized that a majority of jurisdictions "support the conclusion that force used to retain property already peacefully taken, or to attempt to escape, is not the force essential to satisfy the element of force required for robbery." However, Lynch failed to recognize that in *Holley*, the Court also held that "[b]y the same token, a robbery has been held to occur when a defendant uses force or fear in resisting an attempt to regain the property or in attempting to remove property from the owner's immediate presence." *Id.* That is exactly what occurred in this case.

The trial justice defined force as the exertion of strength or energy. Officer Gallucci testified that when he placed the defendant in the rear of the cruiser, the defendant was dazed almost to the point of unconsciousness. Despite his injuries,

Lynch climbed into the front seat of the cruiser, pressed the accelerator and ultimately drove toward Officer Gallucci, striking him in the process. This testimony is highly suggestive of the exertion of strength or energy necessary to satisfy the element of force required to resist an attempt to regain property or remove it from the owner's possession. Further, Officer Gallucci fired a bullet into the driver's side door of the cruiser, as he was running toward the car, in an attempt to stop Lynch. Thus Lynch's attempted escape was anything but peaceful. The charge requested by the defendant has no basis in fact, because the cruiser was never "peacefully taken." Therefore, the defendant's claim that the trial justice's failure to give his requested instruction with respect to the robbery of the police cruiser is denied.

## Conclusion

For the aforementioned reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case may be remanded to Superior Court.