STATE

v.

Keith NUNES.

No. 2000–449–C.A.

Supreme Court of Rhode Island.

Jan. 14, 2002.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

David N. Cicilline, Bristol, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case comes before the Court pursuant to the appeal of the defendant, Keith Nunes (defendant), from a judgment of conviction, which includes one count of

first-degree murder. The defendant argues that the trial justice erred by failing to instruct the jury on the lesser included offense of second-degree murder. The defendant also contends that the trial justice erred by failing to grant his motion for a new trial. We disagree, and conclude that the evidence sufficiently demonstrated more than momentary premeditation, and thus, the trial justice did not err. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

In the early morning hours of June 13, 1999, a group of men, including Mark Pierce (Pierce), Daniel Pion (Pion), and Albert Berarducci (Berarducci),[1] congregated on a boardwalk between the Fish Company Bar & Grill and the Grappa Restaurant (Grappa) near Old Harbor Marina in Providence. While the group conversed, defendant walked nearby and began to urinate into the water. Berarducci was offended. An irritated Berarducci asked defendant if he had to urinate at that location, to which defendant replied with a vulgar comment. Pion asked defendant again to urinate somewhere else. After defendant answered with more expletives, Pion shoved defendant toward the adjacent parking lot. The defendant fell down and when he got up he left the area.

Later, defendant returned with his friend, Theodoric Correy (Correy). As Correy attempted to urinate in the water, Pion intercepted the two and shoved them, advising them to leave the area. Correy and defendant allegedly said "we'll be back." The two then entered a vehicle, along with another male, and left the area. The defendant drove to the Silver Lake

area of Providence, retrieved a gun, and returned to the boardwalk.

Sometime later, Dennis Murray (Murray), a friend of the group who had not been present during the earlier incidents, saw defendant peering into the windows of Grappa, and then disappear. Murray then joined the group and socialized for about ten minutes. Suddenly, defendant returned in the same car he had been driving earlier.

The defendant pulled the car up to where the group had congregated, stuck his torso out of the driver's side window, pointed a small handgun at the group and fired five shots. Pierce was struck in the arm by one of the shots. The bullet traveled through his arm into his chest, and struck his aorta, killing him. The defendant fled the scene, discarded the weapon, went to a motel with Correy and two women, and then ate breakfast.

The defendant was arrested and indicted on ten counts, including first-degree murder and four counts of assault with the intent to murder. A trial commenced in the Superior Court. During the trial, defendant admitted retrieving and shooting the weapon, but argued the defense of diminished capacity as a result of heavy use of marijuana, alcohol and ecstasy. The defendant testified that the influence of the drugs and alcohol reduced his memory to "flashes." He also testified that he was "high" at the time, that he "wasn't really feeling nothing [sic]," and that he was acting but not thinking about his actions.

The defense and the prosecution each produced an expert witness to testify about defendant's ability to make conscious choices and whether the ingestion of the drugs paralyzed defendant's will, rendering him incapable of withstanding evil

1. Berarducci owned a boat docked at the marina where this group regularly socialized.

impulses. The jury ultimately believed the state's expert witness, who opined that defendant retained the ability to make conscious choices and to refrain from acting on evil impulses. The jury found defendant guilty of first-degree murder, one count of assault with the intent to murder, three counts of assault with a dangerous weapon, one count of carrying a pistol without a license, and one count of discharging a firearm from a motor vehicle in a manner that created a substantial risk of death or serious injury to others (drive-by shooting). The trial justice sentenced him to life imprisonment for first-degree murder. The defendant also was sentenced to an additional ten years' imprisonment for each of the remaining counts, to run concurrently, but consecutively with the life sentence.[2] The defendant timely appealed.

## II

### Instruction on Lesser Included Offense

The defendant argues that the trial justice erred in refusing to charge the jury on the lesser included offense of second-degree murder. We disagree.

"General Laws 1956 § 8–2–38 requires the trial justice to instruct the jury on the law to be applied to the issues raised by the parties." *State v. Briggs*, 787 A.2d 479, 486 (R.I.2001) (quoting *State v. Lynch*, 770 A.2d 840, 846 (R.I.2001)). "There is no requirement for particular words to be used in a charge." *Id.* "'The trial justice may instruct the jury in his or her own words as long as the charge sufficiently addresses the requested instructions and correctly states the applicable law.'" *Id.* at 10–11, 787 A.2d 479, 486.

"On review, [this Court] examine[s] the instructions in their entirety to ascertain the manner in which a jury * * * would have understood them * * * and * * * review[s] challenged portions of jury instructions 'in the context in which they were rendered.'" *Id.* at 486–487 (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001)).

"It is well settled that a criminal defendant is 'entitled—and the trial justice is required—to instruct the jury on [a] lesser included offense * * * [w]hen the evidence supports a possible verdict on a lesser included offense.'" *State v. Brown*, 744 A.2d 831, 838 (R.I.2000) (quoting *State v. Messa*, 594 A.2d 882, 884 (R.I.1991)). "A lesser included offense is '[o]ne that does not require proof of any additional element beyond those required by the greater offense.'" *Briggs*, slip op. at 11 (quoting *State v. Rodriquez*, 731 A.2d 726, 729 (R.I.1999)). "However, an instruction on a lesser offense is not necessary 'when such a charge is wholly unsupported by the evidence.'" *Brown*, 744 A.2d at 838 (quoting *State v. Figueras*, 644 A.2d 291, 294 (R.I.1994)). "The distinction between first-degree and second-degree murder is that first-degree murder 'requires proof of premeditation of more than a momentary duration and proof of deliberation whereas second-degree murder does not.'" *Brown*, 744 A.2d at 838 (quoting *State v. Grabowski*, 644 A.2d 1282, 1285 (R.I. 1994)). "Accordingly, we have declared that '[i]f that premeditation is more than momentary, the murder is in the first degree and no charge on second degree murder is necessary; if it could be less, then

---

**2.** According to the transcript, the jury found defendant guilty of one count of drive-by shooting on April 18, 2000. The transcript further reveals that the trial justice dismissed the drive-by shooting count on May 3, 2000, pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. However, the trial justice sentenced defendant to ten years suspended for this count on June 29, 2000. This discrepancy is immaterial to the resolution of the issues raised by this appeal.

the offense may be murder in either the first or second degree, and a charge on both must be given.'" *Id.* at 838–39 (quoting *State v. Campbell*, 691 A.2d 564, 572 (R.I.1997)).

■ In the instant case, the trial justice denied defendant's request for an instruction on second-degree murder because "this case did not invite" a second-degree murder charge. Because we agree that there was no evidence that the premeditation was either momentary or less than momentary, we conclude that the trial justice did not err in his decision.

The record shows that after defendant's two altercations with the group at the boardwalk, he drove to the Silver Lake area to retrieve a gun. Then defendant drove back to the boardwalk searching for the men. As defendant found the group, he drove near, stopped his car, raised his torso out of the driver's side window, and fired five rounds into the crowd. The defendant then fled the scene.

We are satisfied that the evidence sufficiently demonstrated that the circumstances of the murder involved more than momentary resolve. The defendant further contends that the second-degree instruction was warranted because even if the jury did not believe that defendant's intoxication prevented him from forming the requisite intent, it still could have found that the intoxication impaired defendant's ability to premeditate. In this case, we conclude that defendant's argument lacks merit because if defendant was lucid enough to form the intent to kill, then it must follow that he was lucid enough to premeditate.

Accordingly, we are satisfied that the instruction for second-degree murder was not warranted.

## III

### Denial of Motion for New Trial

The defendant also argues that the trial justice erred by denying his motion for new trial. We disagree.

■ "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Salvatore*, 763 A.2d 985, 990–91 (R.I.2001) (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)). "Specifically, the trial justice has at least three analyses to perform when ruling on a motion for a new trial." *Id.* (quoting *Banach*, 648 A.2d at 1367). The three analyses are:

"First, 'the trial justice must consider the evidence in light of the charge to the jury, a charge that is presumably correct and fair to the defendant.' * * * Next, the trial justice should form his or her own opinion of the evidence. * * * In doing so, '[t]he trial justice must * * * weigh the credibility of the witnesses and [the] other evidence and choose which conflicting testimony and evidence to accept and which to reject.' * * * Finally, 'the trial justice must determine by an individual assessment of the evidence and in light of the charge to the jury, whether the justice would have reached a different result from that of the jury.'" *Id.* (quoting *Banach*, 648 A.2d at 1367).

■ The decision to deny a defendant's motion for a new trial will be given great weight in cases in which the trial justice has articulated a sufficient rationale for his or her decision. *See State v. Barrett*, 768 A.2d 929, 946 (R.I.2001) (citing *State v. Mattatall*, 603 A.2d 1098, 1108 (R.I.1992)). This Court will not disturb the trial justice's decision unless the trial justice overlooked or misconceived material evidence relating to a critical issue or if the trial justice was otherwise clearly

wrong. *See Barrett,* 768 A.2d at 946 (citing *Banach,* 648 A.2d at 1367). The record should reflect a few sentences of the trial justice's reasoning on each point, although the trial justice need only cite evidence sufficient for this Court to determine whether the trial justice applied the appropriate standards. *See Salvatore,* 763 A.2d at 991.

 The defendant bases this argument upon three separate grounds, all of which are unpersuasive. The defendant argues that the motion for new trial should have been granted because (1) the state did not prove beyond a reasonable doubt that the defendant was not suffering from diminished capacity, (2) even if it had proved that the defendant was not suffering from diminished capacity, the state did not prove that the defendant had premeditated the murder beyond a reasonable doubt, and (3) the trial justice misconceived and overlooked material evidence. Upon review of the record, we are satisfied that the trial justice did perform the three analyses and articulated sufficient rationale for denying the motion for new trial. Furthermore, we are convinced that the trial justice did not overlook or misconceive material evidence. The trial justice examined the testimony of the defendant and the two expert witnesses and concluded that the combined evidence supported a verdict of guilt beyond a reasonable doubt. Thus, the trial justice did not err in denying the motion for new trial.

## Conclusion

Accordingly, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case may be returned to the Superior Court.