STATE

v.

Peter Austin JONES.

No. 2001–474–C.A.

Supreme Court of Rhode Island.

March 7, 2003.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

On this appeal, the defendant, Peter Austin Jones (defendant or Jones), chal-

lenges the trial justice's refusal to suppress the evidence concerning how the victim identified him as his assailant from a police-assembled photographic array. Jones seeks to overturn his conviction for felony assault under G.L.1956 § 11–5–2. Contending that the trial justice erred in denying his motion to suppress the victim's identification of him as the perpetrator of the crime, he argues that the array of photographs shown to the victim was impermissibly suggestive and tainted the victim's identification of him as the assailant.

A single justice of this Court directed the parties to show cause why the appeal should not be summarily decided. Because neither party has done so, we shall decide the appeal at this time.

On September 12, 1999, at approximately 6 p.m. on a Sunday evening, the victim, Michael Stanton (Stanton or victim), went for a jog on Narragansett Boulevard in the Edgewood section of Cranston. He proceeded on to Allen's Avenue in Providence before he turned around to jog in the direction of his home in Cranston. While jogging along Allen's Avenue towards Providence, Stanton ran by a person on the sidewalk who lunged in his direction as he passed by and who then taunted him. On Stanton's way back to his home in Cranston, this same person taunted him, chased him, and finally punched him in the face, leaving Stanton with a broken jaw in two places. He had to undergo three hours of surgery to wire his mouth shut. Stanton later identified Jones as the assailant and the police charged him with felony assault.

The victim, an investigative reporter for the Providence Journal, provided the police with a physical description of his assailant. He described him as being white; having longish, sandy-brown hair; in his twenties; about six feet in height; weighing approximately 190 pounds; and possibly having a tattoo on one or both arms. A little over a week after the assault, on September 21, 1999, the victim went to the police station to view an array compiled by the police that consisted of six photographs of different individuals. It included defendant and two other Johnson & Wales college students, all of whom had been arrested in a bar fight the night before the incident in question. The police selected the remaining three photographs in the array from other photographs on hand at the station. They included white males in their twenties of similar complexion as defendant. The victim quickly identified defendant's photograph from the array. Although Stanton believed Jones was his attacker, he still wanted to observe him in person to be sure. After viewing the photographs, he was 70 percent certain that defendant was the man who had punched him.

About two months after the assault, the victim received a call from the police asking him to come to the District Court to see whether he could identify his attacker in the courtroom. A detective informed Stanton that he could not tell him whether the person he had identified from the photographic array actually was in the courtroom. The victim entered the crowded courtroom and saw many persons of different ethnic backgrounds. Court was not in session, so he observed the people in the courtroom from the jury box near the judge's bench. From that vantage point, he spotted Jones sitting in the courtroom and recognized him as his assailant. After recognizing defendant as his attacker, the victim proceeded to walk around the courtroom, observing him from more than one vantage point. Upon realizing that he was being watched, Jones slouched down and partly covered his face. After leaving the courtroom to inform the police of his identification, the victim returned to get anoth-

er look at defendant. After once again viewing defendant in the courtroom, Stanton testified that he was completely certain that Jones was the person who had assaulted him.

At the conclusion of the suppression hearing, the hearing justice denied defendant's motion to suppress. He found that the victim's identification of defendant as his assailant was independently reliable because the victim had an "abundant opportunity" to obtain a full view of defendant before, during, and after the attack. The hearing justice also found that the array of snapshots did not taint the victim's identification because the photographic images were sufficiently similar. The jury trial on the charge of felony assault then proceeded, and the jury found defendant guilty of felony assault.

On appeal, defendant argues that the trial justice erred in denying his motion to suppress Stanton's identification. He contends that the photographic array was unnecessarily suggestive because his photograph was the only one that matched the description of the assailant provided by the victim. Therefore, he posits, the victim's identification of him was tainted because his photograph improperly stood out from the others included in the array.

■ "[T]he standard employed by this Court when reviewing a pretrial motion to suppress is the clearly erroneous standard, taking the evidence in the light most favorable to the government." *State v. Lynch,* 770 A.2d 840, 844–45 (R.I.2001). We use a two-pronged analysis to determine whether an out-of-court identification has violated a defendant's due-process rights. *Id.* at 844 (citing *State v. Mastracchio,* 612 A.2d 698, 704 (R.I.1992)).

"The first step is to determine 'whether the identification procedure used was unnecessarily suggestive.' *State v. Gardiner,* 636 A.2d 710, 715 (R.I.1994).

The trial justice need not proceed to the next step of the analysis—whether the identification lacks independent reliability despite the procedure's suggestiveness—unless the first part of the test is answered in the affirmative." *Id.* at 844 (citing *Mastracchio,* 612 A.2d at 704).

If the trial justice concludes that the police used unnecessarily suggestive identification procedures, he or she must turn to the second prong of the analysis, and "determine whether the identification lacks 'independent reliability' despite the nature of the identification procedure." *Mastracchio,* 612 A.2d at 704 (quoting *State v. Camirand,* 572 A.2d 290, 293 (R.I.1990)).

■ We are of the opinion that the photographic array in this case was not unduly suggestive vis-à-vis defendant. All the photographs depicted white males; three of the men in the photographs could be described as having "longish" hair; three of the men in the array could be described as having sandy-colored hair. At the time of the attack, defendant, a white male, had longish, sandy-colored hair. He also shared other similar facial features with some of the other men depicted in the array. Thus, based on our review of this evidence, we conclude that the array was not unnecessarily suggestive.

■ Moreover, even if the array had been unnecessarily suggestive, the evidence showed that the victim's ultimate identification of the defendant as his assailant possessed independent reliability.

"The factors to be considered when determining if an identification is independently reliable include the opportunity of the witness to view the criminal, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."

*Mastracchio,* 612 A.2d at 705 (quoting *State v. Gomes,* 604 A.2d 1249, 1253 (R.I.1992)).

Here, the victim had many clear opportunities to view his assailant. Because his attacker had previously lunged in his direction when he first ran by him, the victim was paying close attention to him when he passed him on the street for a second time. The time frame between the attack and the courtroom confrontation was only a few weeks, so the passage of time did not appear to have had much effect on the identification. The victim's previous description of the defendant was fairly accurate, even though he apparently overestimated his weight.[1] The victim also evinced a substantial degree of certainty when he saw the defendant's photograph in the array, and his certainty became absolute after he viewed the defendant in person.

For these reasons, we conclude, the trial justice was not clearly wrong in denying the defendant's motion to suppress the identification. Thus, we deny the appeal and affirm the judgment of conviction.

---

**1.** The defendant testified that he weighed 155 pounds, while Stanton had estimated the defendant's weight at 190 pounds.