STATE

v.

**Dean A. IMBRUGLIA.**

No. 2005–129–C.A.

Supreme Court of Rhode Island.

Jan. 16, 2007.

Diane Daigle, Esq., for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

ROBINSON, Justice for the Court.

On July 28, 2004, a jury found the defendant, Dean A. Imbruglia, guilty of first-degree robbery in connection with an inci-

dent that occurred on April 26, 2003. On October 25, 2004, the defendant received a sentence of twenty-five years imprisonment, with twelve years to serve followed by a thirteen-year suspended sentence with thirteen years probation.

The defendant has appealed to this Court, contending (1) that the trial justice erred in denying defendant's motion for a judgment of acquittal and his motion for a new trial, in both of which motions he argued that the eyewitness evidence was not legally sufficient to support a guilty verdict beyond a reasonable doubt; (2) that the trial justice erred in denying defendant's motion to suppress the evidence of the identification made by the victim, which motion contended that the procedure used to obtain the identification was unduly suggestive; and (3) that the trial justice's instruction regarding the "beyond a reasonable doubt" requirement was flawed because it failed to adequately convey to the jury the high degree of certainty that is constitutionally required before a criminal defendant may be found guilty.

This case came before this Court on November 9, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having considered the record, the memoranda filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

### Facts and Travel

The defendant was charged with first-degree robbery. A jury trial began on July 27, 2004 and ended with a guilty verdict on July 28, 2004. We set forth below the most significant testimony given by the several witnesses who testified during the two-day trial.

Sandra Oliveira testified that on April 26, 2003, at approximately 9 p.m., she was sitting in the driver's seat of her car in the middle of a small parking lot on the corner of Smithfield Avenue and Chandler Avenue in Pawtucket, waiting for her boyfriend to return from one of the houses surrounding the parking lot. She testified that street lights and lights from one of the surrounding houses were illuminating the area. According to Ms. Oliveira, the car engine was running, the car doors were unlocked, and she was listening to the radio.

Ms. Oliveira testified that a man opened the driver's side door of the car in which she was seated, causing the interior car light to turn on. According to Ms. Oliveira, the man asked her for her pocketbook, and, when she did not respond, he grabbed a knife, placed his hand on her face and pushed her into the passenger seat, climbed into the car, grabbed her pocketbook from the back seat, and then ran away. Ms. Oliveira testified that she immediately rushed into the house where her boyfriend was. Ms. Oliveira's boyfriend and his friend ran out into the parking lot while another occupant of the house dialed 911.

According to Ms. Oliveira, she narrated what had transpired to the police when they arrived at the scene. She testified that she described her attacker as being a white male in his late thirties or early forties, approximately five feet ten inches tall and weighing 180 pounds, with light eyes and a goatee. Ms. Oliveira testified that she also told the police that her attacker had been wearing "[a] baseball cap, a gray sweatshirt with red lettering, and dark blue jeans."

Theodore Georgitsis, the Pawtucket Police Department patrol officer who re-

sponded to the parking lot at the corner of Smithfield and Chandler Avenues that night, testified that Ms. Oliveira informed him that a man had opened her car door and stolen her purse at knifepoint. Patrol Officer Georgitsis testified that Ms. Oliveira described her attacker as being a white male in his forties who had a mustache and goatee and who was wearing a gray sweatshirt and a baseball hat.

According to Ms. Oliveira, after speaking with the police at the scene, she traveled to the Pawtucket Police Station, where she recounted the night's events to Detective Robert Matook. Detective Matook testified that Ms. Oliveira described her attacker as being a white male in his late thirties or early forties who was about five feet ten inches tall and weighed about 180 pounds; the detective added that Ms. Oliveira also stated that the attacker had a mustache and goatee and was wearing a baseball cap and a gray sweatshirt. Thereafter, according to both Ms. Oliveira and Detective Matook, she looked at over 900 mug photographs in the Pawtucket Police Department's computer database to see whether she could recognize her attacker. Detective Matook testified that he had set the parameters on the computer program so that Ms. Oliveira would only be presented with photographs of white males between thirty-two and forty-eight years in age. Additionally, Detective Matook showed Ms. Oliveira approximately 150 to 200 more photographs, all of white males, which were kept in the department's mug books. Detective Matook testified that Ms. Oliveira spent almost two hours studying these photographs; both Detective Matook and Ms. Oliveira indicated to the detective that she did not recognize any of these people as her attacker. Detective Matook later acknowledged that defendant's image did not appear in any of the approximately 1,000 photographs Ms. Oliveira looked at that night.

Detective Matook testified that a couple of days later he traveled to Ms. Oliveira's workplace with six more photographs of white males. According to the detective, she read and understood a disclaimer informing her that she need not pick anyone if she did not actually see a picture of her attacker. Detective Matook testified that Ms. Oliveira did not identify any of those men as her attacker and that defendant's picture was not in that photo array. Ms. Oliveira's testimony was consistent with this account.

Detective Matook testified that he next visited Ms. Oliveira on June 6, 2003. After presenting the disclaimer to Ms. Oliveira once again, the detective showed her another six-photo array which he had compiled using her description of the attacker's age, sex, race, and other physical characteristics. According to Detective Matook, Ms. Oliveira pointed out two photographs as being familiar in the sense that one of them may have been her attacker. At that point, Detective Matook testified, he suggested that she cover with a piece of paper the heads of the persons in the photos to make it appear as though the persons depicted were wearing baseball caps. According to Detective Matook, Ms. Oliveira did so with all six photos, and she then proceeded to identify photograph number three, which depicted defendant, as being a picture of her attacker. She then signed her name and the date on that photo. Ms. Oliveira's testimony was corroborative on this point as well.

On July 26, 2004, the day before the trial began, the court heard defendant's motion to suppress evidence of the identification made by Ms. Oliveira. In his motion, defendant argued that the procedure used to obtain the identification was unduly suggestive. The trial justice denied the motion to suppress, and trial commenced. At

the close of the state's case, defendant unsuccessfully moved for a judgment of acquittal on the basis of insufficient evidence. At the conclusion of the trial, the jury returned a guilty verdict. The defendant then filed a motion for a new trial, which was denied on September 9, 2004. The defendant received a sentence of twenty-five years imprisonment, with twelve years to serve followed by a thirteen-year suspended sentence with thirteen years probation. The defendant filed a timely notice of appeal.

## Analysis

### I

### Motion for Judgment of Acquittal and Motion for New Trial

The defendant's first contention on appeal is that the trial justice erred in denying defendant's motion for a judgment of acquittal and his motion for a new trial, in both of which he argued that the eyewitness evidence was not legally sufficient to support a guilty verdict beyond a reasonable doubt. He emphasizes the point that Ms. Oliveira had only a few seconds to observe her attacker. The defendant additionally argues that Ms. Oliveira's view of her attacker's face was obstructed both by her attacker's placement of his hand on her face while pushing her to the passenger seat of her car and by the baseball cap the attacker was wearing. The defendant also contends that Ms. Oliveira could not have been able to obtain a sufficient view of her attacker's face in those few seconds because she must have been focusing on the knife he was holding—indeed, she specifically admitted that she "got a good look" at the knife. Finally, defendant also argues that the identification was flawed due to the fact that Ms. Oliveira did not make her identification of defendant until five weeks after the incident. We are not persuaded by any of these contentions.

■ This Court reviews a decision as to whether or not to grant a motion for a judgment of acquittal utilizing the same standards as those applied by the trial justice. State v. Hallenbeck, 878 A.2d 992, 1009–10 (R.I.2005). In doing so, we view the evidence in the light most favorable to the prosecution, and we draw "all reasonable inferences consistent with guilt" from the evidence. State v. Brown, 798 A.2d 942, 950 (R.I.2002). In addition, we refrain from "weighing the evidence or assessing the credibility of the witnesses." Id. The trial justice's denial of a motion for a judgment of acquittal will be upheld if "the evidence is sufficient to sustain a verdict of guilty beyond a reasonable doubt." State v. Boillard, 789 A.2d 881, 888 (R.I.2002).

■ In this case, the trial justice applied the correct standards in denying defendant's motion for a judgment of acquittal. He acknowledged that he was required to accord full credibility to Ms. Oliveira. See State v. Snow, 670 A.2d 239, 243 (R.I.1996); see also State v. Otero, 788 A.2d 469, 475 (R.I.2002). He explained that Ms. Oliveira, through her testimony, had satisfied the required elements of the offense for which defendant was on trial. More specifically, the trial justice articulated that Ms. Oliveira had testified that a man opened her car door while she was seated inside, indicated that he wanted her pocketbook, and, after pulling a knife and shoving her to the other side of the car when she did not immediately respond, grabbed the pocketbook from the back seat of the vehicle and fled. Ms. Oliveira provided consistent, detailed descriptions of her attacker on four separate instances, and she ultimately identified defendant as her attacker out of a photo array. In view of these considerations, the trial justice concluded that the evidence presented was sufficient

to sustain a guilty verdict beyond a reasonable doubt for first-degree robbery, and he denied defendant's motion for a judgment of acquittal. We perceive no error in the trial justice's analysis or in his ultimate decision regarding defendant's motion for a judgment of acquittal.

■ A trial justice's ruling on a motion for a new trial is accorded great weight if he or she has set forth sufficient reasoning in support of the ruling. *State v. Rieger*, 763 A.2d 997, 1001–02 (R.I. 2001); *see also Hallenbeck*, 878 A.2d at 1011; *State v. Lynch*, 854 A.2d 1022, 1046 (R.I.2004). As we stated in *State v. Nunes*, 788 A.2d 460, 465 (R.I.2002), "[t]he record should reflect a few sentences of the trial justice's reasoning on each point, although the trial justice need only cite evidence sufficient for this Court to determine whether the trial justice applied the appropriate standards." *See also State v. Luanglath*, 863 A.2d 631, 637 (R.I.2005). Absent clear error and absent a determination by this Court that the trial justice "overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case," we will defer to the trial justice's ruling. *State v. Bolduc*, 822 A.2d 184, 187 (R.I.2003); *see also Hallenbeck*, 878 A.2d at 1011; *Lynch*, 854 A.2d at 1046.

■■ "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994); *see also Hallenbeck*, 878 A.2d at 1011; *Luanglath*, 863 A.2d at 637; *State v. Grayhurst*, 852 A.2d 491, 520 (R.I.2004); *Nunes*, 788 A.2d at 464. If the trial justice concludes that he or she would have reached the same result as the jury did or that reasonable minds could differ as to the result, the motion for a new trial must be denied. *State v. Dyer*, 813 A.2d 71, 75 (R.I.2003);

*see also Luanglath*, 863 A.2d at 637; *State v. Bettencourt*, 723 A.2d 1101, 1113 (R.I. 1999).

In the instant case, the trial justice performed the requisite review carefully and completely, and he adequately articulated his reasons for denying defendant's motion. The record indicates that the trial justice would have decided the case as the jury did. In his opinion, the state proved the required elements of the crime, and he would have found that defendant stole Ms. Oliveira's pocketbook by threat or force.

■ The trial justice provided a detailed explanation of his conclusion that Ms. Oliveira was a credible witness, pointing to her neutrality, reasonableness, alertness, and ability to articulate. He also discussed his reasons for determining that her identification was credible, reiterating much of what he had stated at the time of his denial of defendant's motion to suppress Ms. Oliveira's identification of defendant. As a result, the trial justice concluded that the state had "made out a case of guilt beyond a reasonable doubt," and he therefore denied defendant's motion for a new trial. Nowhere in the record is there anything that would suggest that the trial justice overlooked or misconceived any material evidence or otherwise clearly erred. Accordingly, we uphold the trial justice's decision to deny defendant's motion for a new trial.

## II

## Motion to Suppress Victim's Identification of Defendant

The defendant's second contention is that the trial justice erred in denying defendant's pretrial motion to suppress the evidence of the identification made by the victim, which motion contended that the procedure used to obtain the identification

was unduly suggestive. The defendant argues that the detective's suggestion to Ms. Oliveira that she place a piece of paper over the foreheads of the men in the photographs to simulate a baseball cap aided in her identification of defendant.[1] We are not persuaded by this contention.

When reviewing a pretrial motion to suppress, this Court employs the clearly erroneous standard, viewing the evidence in the light most favorable to the prosecution. *State v. Lynch,* 770 A.2d 840, 844–45 (R.I.2001). In determining whether an out-of-court identification has violated a defendant's due process rights, the trial justice must utilize a two-pronged analysis. *State v. Jones,* 818 A.2d 649, 651 (R.I.2003); *Lynch,* 770 A.2d at 844. First, the trial justice must decide whether the procedure utilized to procure the identification was impermissibly suggestive. *See Jones,* 818 A.2d at 651; *Lynch,* 770 A.2d at 844. If the trial justice concludes that the identification procedure was impermissibly suggestive, he or she must proceed to the second step and decide whether or not the identification possesses independent reliability without regard to the procedure used. *See Jones,* 818 A.2d at 651; *Lynch,* 770 A.2d at 844.

Under the first prong of the analysis, a photographic identification procedure would be deemed impermissibly suggestive if it would occasion a high likelihood of misidentification. *See State v. Gatone,* 698 A.2d 230, 235 (R.I.1997). The trial justice must compare the general characteristics of each person featured in the photo array that was utilized with the description of the suspect given by the victim. *Lynch,* 770 A.2d at 845. A photo array poses a substantial risk of misidenti-

fication, and thus is impermissibly suggestive, only if the persons in the photo array do not have the same general characteristics as the victim's description of the assailant. *See id.; State v. Luciano,* 739 A.2d 222, 226 (R.I.1999). It is important to note that the images constituting a photographic array need not be "look-alikes," but rather need only possess similar general characteristics. *Gatone,* 698 A.2d at 236.

Under the second prong of the analytical process described in *Jones,* 818 A.2d at 651, when contemplating whether an identification is independently reliable, the trial justice must consider "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also Jones,* 818 A.2d at 651; *State v. Corbin,* 805 A.2d 702, 703 (R.I.2001) (mem.).

In denying defendant's motion to suppress, the trial justice in this case stated:
"I find that the photo spread itself on its face is extremely fair.

"We have six white males, all roughly the same age, all with roughly the same type of facial hair, and I think there's no question as to the fairness of the photo pack used during the identification by the witness. That, of course, is only the beginning of the inquiry, but I likewise find that based upon the disclaimer document * * *, as well as the procedure

---

1. It will be recalled that, before the suggestion about the piece of paper was made, Ms. Oliveira had already told the police that she considered the men in two of the photographs

in the six-photo array to look "familiar" in the sense that one of them may have been the person who had attacked her.

outlined by the victim that there was no improper suggestiveness relative to [the] procedure employed by the Pawtucket Police Department.

"I think it was a fair procedure, leading to what one could conclude was a reliable identification, and so I agree with the state that I am not at all convinced this Court even gets to the second phase of the analysis, because I find no unduly suggestive photo pack in this instance was used, but assuming that it is in somehow or some way unduly suggestive either on its face or relative to the procedure utilized and the conversations between the victim and the detective, I nevertheless find that reliability has been proven sufficient to deny the motion to suppress, and I have considered the five factors set forth in *Neil* * * * and of course again adopted in * * * Rhode Island case authority, including *State [v.] Thomas Gatone*, a 1997 decision * * *."

■■■■■ It is our opinion that the trial justice properly denied defendant's motion to suppress the evidence of the identification made by Ms. Oliveira. Regarding the first prong of the analytical process, the trial justice determined that the identification procedure utilized in the instant case was not unduly suggestive. He pointed to the fact that the photo array contained the images of six white males, all of whom were roughly the same age and had similar characteristics, and he further explained that he did not find any improper suggestiveness in the procedure implemented by the police department. Although the trial justice did not feel that analysis under the second prong was required in this in-

stance, he nonetheless set forth his reasoning in that regard. More specifically, he determined that the identification satisfied the five criteria set forth by the United States Supreme Court in *Neil*, 409 U.S. at 199–200, 93 S.Ct. 375, and was therefore sufficiently reliable.

For these reasons, the trial justice denied the motion to suppress, and we perceive nothing approaching clear error in the analytical method that he employed or in his conclusion.

## III

### Trial Justice's Instruction Regarding "Beyond a Reasonable Doubt"

The defendant's third contention is that the trial justice's instruction to the jury regarding the "beyond a reasonable doubt" requirement was flawed because it failed to adequately convey to the jury the high degree of certainty that is constitutionally required before a criminal defendant may be found guilty. We are not persuaded by this contention.

■■■■■ Pursuant to G.L.1956 § 8–2–38,[2] a trial justice must instruct the jury on the legal principles that are to be applied to the issues raised in each case. *Lynch*, 770 A.2d at 846. He or she is required to adequately cover the law when instructing a jury. *State v. Ensey*, 881 A.2d 81, 95 (R.I.2005); *State v. Leuthavone*, 640 A.2d 515, 521 (R.I.1994). The trial justice need not use particular words in the instruction, but must "correctly state[ ] the applicable law." *State v. Mastracchio*, 546 A.2d 165, 173 (R.I.1988); *see also Lynch*, 770 A.2d at 846.

**2.** General Laws 1956 § 8–2–38 provides in pertinent part:

"In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law

relating to the action, and may sum up the evidence therein to the jury whenever [the justice] may deem it advisable so to do * * *."

When this Court reviews jury instructions, it seeks to determine how a "jury of ordinary intelligent lay people would have understood them." *State v. John*, 881 A.2d 920, 929 (R.I.2005) (quoting *State v. Hurteau*, 810 A.2d 222, 225 (R.I. 2002)); *Hallenbeck*, 878 A.2d at 1007; *State v. Ibrahim*, 862 A.2d 787, 796 (R.I. 2004). We scrutinize the jury instructions in their entirety in order to ascertain whether or not a particular instruction misled or confused the jury. *Ibrahim*, 862 A.2d at 796; *see also John*, 881 A.2d at 929; *Hallenbeck*, 878 A.2d at 1007. In doing so, we do not isolate a challenged portion from the instructions as a whole, but rather we scrutinize the challenged portion in the context of the entire charge. *John*, 881 A.2d at 929; *Ibrahim*, 862 A.2d at 796; *State v. Aponte*, 800 A.2d 420, 428 (R.I.2002). Although we have frequently described the analytical process that we employ in scrutinizing jury instructions regarding their constitutional or legal adequacy, it appears that we have never explicitly articulated that our standard of review in performing that process is *de novo*. We take this opportunity to state explicitly that that is our standard of review in this context.[3]

In this case, the trial justice instructed the jury regarding reasonable doubt as follows:

"Always bear in mind that a defendant does not have to prove or disprove anything. It is the State that has the burden of proving beyond a reasonable doubt each and every element of any offense under consideration and that the defendant did, in fact, commit that offense.

"The term beyond a reasonable doubt does not easily lend itself to definition. Let me begin by telling you what a reasonable doubt does not encompass. Obviously the State's obligation to prove guilt beyond a reasonable doubt does not mean that it must do so beyond all possible doubt or beyond a shadow of a doubt. Reasonable doubt is not a whimsical or fanciful doubt, nor is it a doubt which is prompted by sympathy.

"On the other hand, you may not convict a defendant merely because of suspicion, conjecture or surmise. The State must present evidence which, upon examination, is found to be so convincing and compelling as to leave in your minds no reasonable doubt about the defendant's guilt.

"We know from experience what a doubt is, just as we know when something is reasonable or unreasonable. Reasonable doubt by definition is a doubt based upon reason and not conjecture or speculation. A reasonable doubt is a doubt based upon evidence or lack

---

**3.** It is noteworthy that the First Circuit has on numerous occasions indicated that it conducts its review of the adequacy of jury instructions, a review that is quite similar to that carried out by this Court, on a *de novo* basis. *See, e.g., United States v. Tom*, 330 F.3d 83, 91 (1st Cir.2003) ("Where the alleged error involves the instructions' adequacy in explaining the law, this Court reviews jury instructions de novo. * * * [T]his Court conducts its review by looking at the entire charge, in light of the evidence, and 'determin[ing] whether, taken as a whole, the court's instructions fairly and adequately submitted the issues in the case to the jury.' "

(quoting *United States v. Woodward*, 149 F.3d 46, 69 (1st Cir.1998))); *United States v. Smith*, 278 F.3d 33, 36 (1st Cir.2002) ("We conduct a de novo review 'to determine whether the instructions, taken as a whole, show a tendency to confuse or mislead the jury with respect to the applicable principles of law.' " (quoting *United States v. Fulmer*, 108 F.3d 1486, 1494 (1st Cir.1997))); *United States v. Duclos*, 214 F.3d 27, 34 (1st Cir.2000) ("[A] claim [of an error in jury instructions] is subject to de novo review. * * * An error in jury instructions will mandate reversal only when the error is prejudicial based on a review of the entire record.").

of evidence. Proof beyond a reasonable doubt exists when, after you have thoroughly considered and examined all of the evidence that is before you, you have a firm belief that the defendant is guilty as charged."

 It is our opinion that the trial justice in this case appropriately instructed the jury regarding reasonable doubt. He clearly explained that the burden of proving every element of the offense fell on the state, and he clearly stated that defendant was not required to prove or disprove anything. When viewed as a whole, the instruction adequately addressed the concept of reasonable doubt. *See State v. Saluter,* 715 A.2d 1250, 1257 (R.I.1998); *State v. Firth,* 708 A.2d 526, 533 (R.I.1998). Furthermore, the fact that the instruction included the term "firm belief" did not render the instruction inadequate because, when considered in its entirety, the instruction did not mislead or confuse the jury as to the meaning of "beyond a reasonable doubt." We conclude that the jury instruction at issue would convey to a jury of ordinary intelligent lay people the correct degree of certainty needed to find defendant guilty.

Accordingly, we find no error in the trial justice's instruction.

This Court upheld an almost identical jury instruction regarding reasonable doubt in *State v. Anderson,* 752 A.2d 946 (R.I.2000).[4] In that case, we upheld the instruction, noting that it "more than adequately set forth the state's beyond a reasonable doubt burden of proof" as well as the presumed innocence of the defendant. *Id.* at 951. Additionally, we stated that the instruction could not "be considered to be pro-prosecution in its wording or tone." *Id.* Finally, we unequivocally held in *Anderson* that "in light of the charge as a whole, the trial justice's use of the term 'firm belief' did not affect the propriety of the instructions and in no way would have misled or confused the jury." *Id.* After careful consideration, we are not at all convinced that we should depart from our holding in *Anderson,* nor are we persuaded by any of defendant's attempts to distinguish this case from that one.

The defendant also argues that the trial justice erred in denying defendant's request to provide the jury with an instruction containing certain phraseology suggested by defendant. Specifically, de-

---

**4.** The trial justice in *State v. Anderson,* 752 A.2d 946, 950 (R.I.2000), gave the following instruction:

"Always bear in mind that a defendant does not have to prove or disprove anything. It is the State which has the burden of proving beyond a reasonable doubt each and every element of any offense under consideration.

"Now the term 'beyond a reasonable doubt' does not easily lend itself to definition. Let me begin by telling you what a reasonable doubt does not encompass. Quite obviously, to prove something beyond a reasonable doubt does not require the State to prove it beyond a shadow of a doubt; nor is the State required to prove guilt beyond all possible doubt. Reasonable doubt is not a whimsical or fanciful doubt; nor is it doubt which is prompted by

sympathy. On the other hand, you may not convict a defendant merely because of suspicion or conjecture. The State must present evidence which, upon examination, is found to be so convincing and compelling as to leave in your minds no reasonable doubt about the defendant's guilt.

"We know from experience what a doubt is, just as we know when something is reasonable or unreasonable. Reasonable doubt, by definition, is a doubt founded upon reason and not conjecture or speculation. A reasonable doubt is a doubt based upon evidence or lack of evidence. Proof beyond a reasonable doubt exists when, after you have thoroughly considered and examined the evidence before you, you have a firm belief that the defendant is guilty as charged."

fendant had asked the trial justice to include the phrases "abiding conviction" and "moral certainty" in his instruction regarding reasonable doubt, but he declined to do so.

 It should go without saying that a trial justice is not required to automatically grant a request for a jury instruction worded in a particular manner. *Mastracchio*, 546 A.2d at 173; *see also Aponte*, 800 A.2d at 427. A refusal to grant such a request constitutes reversible error only if the requested instruction (assuming that it is otherwise appropriate) is not "fairly covered" in the instructions that the trial justice actually chooses to give. *State v. Price*, 706 A.2d 929, 934 (R.I.1998); *see also Hallenbeck*, 878 A.2d at 1008.[5] In this case, there was no error in the trial justice's denial of defendant's request that the particular phraseology proposed by defendant be employed. The trial justice was not obligated to use the specific words requested by defendant because he "fairly covered" the concept expressed by those words when he referred in his instructions to the requirement that the jurors must have a "firm belief" in order to find defendant guilty.[6]

Accordingly, we hold that the trial justice's jury instruction regarding reasonable doubt was not erroneous.

### Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court.

The record may be remanded to the Superior Court.

---

**5.** In *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the United States Supreme Court held that the United States "Constitution does not require that any particular form of words be used" when a trial justice is instructing a jury with respect to the concept of "beyond a reasonable doubt." All that is required, the Court explained, is that the instructions in their entirety correctly convey the concept to the jury. *Id.; see also Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

**6.** In view of the fact that defendant wanted the phrase "moral certainty" used in the court's instruction regarding reasonable doubt, it is interesting to note that the Supreme Court in *Victor* specifically frowned upon the use of the phrase "moral certainty" in such instructions. *See Victor*, 511 U.S. at 14, 16–17, 114 S.Ct. 1239.